**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JEANETTE N. MOTTER,**

       **Plaintiff,**

                                     **Civil Action 2:20-cv-4941**
      **v.**                            **Judge Sarah D. Morrison**
                                     **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jeanette N. Motter, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff filed her application for benefits on April 9, 2019, alleging that she has been disabled since February 1, 2017. (R. at 136-137.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On February 4, 2020, ALJ Timothy G. Keller (the "ALJ") held a hearing at which Plaintiff, represented by counsel, appeared and testified. (R. at 32-59.) The ALJ issued a decision finding

1

that Plaintiff was not disabled within the meaning of the Social Security Act on February 24, 2020. (R. at 12-31). On March 19, 2020, Plaintiff filed a Request for Review of Hearing Decision Order. (R. at 132-134.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Then, on September 18, 2020, Plaintiff timely commenced the instant action. (ECF No. 1.)

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the Agency and her relevant hearing testimony:

> [Plaintiff] testified that anxiety did not really affect [her] at work. Additionally, she did not testify that depression affected her while she was working.
>
> ***
>
> During the hearing, [Plaintiff] testified that she stopped drinking alcohol after she was diagnosed with cirrhosis of the liver.
>
> ***
>
> During the hearing, [Plaintiff] testified that constant vomiting and being unable to keep food or liquids down were the biggest problems that prevented her from being able to work. Further, she testified that she suffered from anxiety and depression for many years, but stated that she had not had a panic attack for six years and was not anxious at work.
>
> ***
>
> [D]uring the hearing [Plaintiff] testified that her mental health impairments had not prevented her from working.

(R. at 19, 21, 24 (internal citations omitted).)

## III. RELEVANT MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's alleged impairments:

2

[Plaintiff] alleged that the conditions that limit her ability to work include cirrhosis of the liver, a history of a double mastectomy, and that she requires a liver transplant.

\*\*\*

After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the record documents generally normal physical examination findings, including normal gait or ambulation and full range of motion in all extremities. After her date last insured (DLI), some physical examinations included abnormal clinical findings, including appearing malnourished, looking very tired on one occasion, appearing chronically ill and obviously jaundiced, abdominal tenderness to palpation, and a distended abdomen from ascites.

Prior to her DLI, the record documents [Plaintiff's] diagnoses and treatment of Type II diabetes mellitus. However, the record documents that this condition was effectively controlled with conservative care. During a diabetic foot examination performed on June 7, 2016, [Plaintiff's] physical examination was generally normal, except for chronic toe pain with a fungal infection of the toenails, which were treated during the visit.

On February 9, 2017, [Plaintiff] reported concerns regarding diarrhea, nausea, and vomiting; however, she was advised to increase her water and food intake. Notably, on May 18, 2018, the record noted that [Plaintiff's] exercise level was moderate and that she was walking. Next, on May 27, 2018, her diabetes was noted to be stable. During an emergency care visit, on July 20, 2018, she reported that her diabetes was diet-controlled and that she did not take insulin.

Further, after [Plaintiff's] DLI and during an emergency care visit, on November 7, 2018, she reported complaints of nausea, vomiting, and that she had not been able to keep any foods or fluids down. She was diagnosed with nausea/vomiting, dehydration, hypokalemia, and alcoholic liver disease. An ultrasound of her right upper quadrant noted mild gallbladder wall thickening of an uncertain etiology and probable diffuse hepatic steatosis. During a follow-up visit, on November 15, 2018, she reported complaints of nausea, vomiting, fatigue, and weight loss. Her physical examination was generally normal, except her skin was noted as pale and jaundiced, and palpation of her abdomen revealed tenderness in the right and left lower quadrants. On May 24, 2019, her A1c was noted is 5.1.

Additionally, the record documents a diagnosis of diabetic neuropathy and the impairment was noted as stable. The record failed to establish that this condition caused significant limitations regarding [Plaintiff's] ability to perform work activities, as her physical examinations were grossly normal, as noted above. Moreover, prior to the DLI, the record failed to document recurrent emergency care or inpatient hospitalizations, due to Type II diabetes mellitus or diabetic neuropathy.

Prior to the DLI, the record documented [Plaintiff's] history of undergoing a bilateral mastectomy and breast implant procedures, due to a diagnosis of breast cancer; however, the record notes that this condition was stable. Further, on February 2, 2017, the record noted [Plaintiff] has a remote history of breast cancer and that she was long [*sic*] no longer being treated. Moreover, during a January 11, 2018 breast cancer follow-up visit, [Plaintiff] was noted as doing well, without any new breast pain or masses; additionally, the record noted that she had no new concerns. In fact, a MRI of [Plaintiff's] breasts, performed on February 16, 2018, noted no signal or enhancement characteristic within either reconstructive breast to suggest recurrent malignancy or other acute pathology.

Regarding [Plaintiff's] diagnosis of alcoholic cirrhosis, in 2017 and 2018, [Plaintiff's] alcohol intake was noted as being heavy, as she was noted to have one to two drinks per night and a half of a fifth on weekend nights. However, in late 2018 and 2019, the record notes [Plaintiff] stated that she had stopped drinking.

After [Plaintiff's] DLI, and during an emergency care visit that occurred in November 7, 2018, she reported complaints including nausea, vomiting, and an inability to keep foods or fluids down. After examination and treatment, she was diagnosed with nausea/vomiting, dehydration, hypokalemia, and alcoholic liver disease. On November 15, 2018, she reported symptoms including abdominal pain, vomiting, fatigue, and weight loss.

Further, a December 3, 2018 CT scan of [Plaintiff's] abdomen and pelvis revealed fatty infiltration of the liver and mild extrahepatic biliary duct dilatation. Next, on December 26 2018, a MRI of [Plaintiff's] abdomen indicated mild biliary dilation.

Well after her DLI, on March 14, 2019, she was hospitalized, due to diagnoses of abdominal distention (gaseous) and spontaneous bacterial peritonitis; she was discharged on March 19, 2019, and the record noted that she had been recently diagnosed with alcoholic cirrhosis. On March 15, 2019, she underwent an ultrasound-imaging guided paracentesis procedure to remove ascites. In April of 2019, during an evaluation for paracentesis, her anxiety and depression were noted as stable, and she reported she had not drank alcohol since December 2018. On April 23, 2019, the record notes [Plaintiff] was requiring paracentesis every two weeks. Further, on April 1, 2019, April 23, 2019, May 3, 2019 and May 20, 2019, the record documents [Plaintiff] underwent therapeutic paracentesis procedures. On

4

May 20, 2019, she [] was noted to have a moderate volume of ascites, prior to paracentesis.

However, on December 17, 2019, the record notes that she had no acute complaints, and that she had abstained from alcohol since January of 2019. A physical examination noted normal results, including no gross focal motor deficits she. She was diagnosed with alcoholic cirrhosis with ascites. Subsequently, a December 19, 2019 MRI of [Plaintiff's] abdomen documented cirrhosis without suspicious liver lesion. Consequently, the above- summarized evidence supports the limitations found within the above-stated residual functional capacity (RFC) assessment, as said limitations adequately accounted for and accommodated the combined effects of [Plaintiff's] severe impairments and the associated symptoms. Further, while the record documents post-DLI treatment of alcoholic cirrhosis, the undersigned notes that [Plaintiff's] acute complaints seem to have diminished since she has abstained from alcohol.

(R. at 21-23 (internal citations omitted).)

## IV. ADMINISTRATIVE DECISION

On February 24, 2020, the ALJ issued his decision. (R. at 12-31.) First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2018. (R. at 17.) At step one of the sequential evaluation process, [1] the ALJ found that Plaintiff

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

did not engage in substantially gainful activity during the period from her alleged onset date of February 1, 2017 through her date last insured ("DLI") of September 30, 2018.  (*Id.*)  The ALJ found that through the DLI, Plaintiff had the severe impairments of alcoholic cirrhosis, a history of breast cancer - status/post double mastectomy, and Type II diabetes mellitus with diabetic neuropathy.  (*Id.*)  He further found that through the DLI, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 19.)   At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could frequently climb ramps and stairs; and she could frequently balance, stoop, kneel, crouch, and crawl.

(R. at 20.)  As for medical opinions, the ALJ found as follows:

> First, the undersigned considered the opinion of the State agency medical consultants, who opined that [Plaintiff] retained the ability to perform work at the medium level of exertion, with exertional and postural limitations. Accordingly, the undersigned finds the medical consultants' opinions to be overall non-persuasive, as said opinions are neither totally consistent with nor supported by the updated record received at the hearing level. Alternatively, the updated record documents a greater degree of limitation, due to the symptoms associated with [Plaintiff's] severe impairments, including diarrhea, nausea, vomiting, fatigue, and weight loss, and supports limiting [Plaintiff] to performing work at the light level of exertion, consistent with the limitations found within the above-stated RFC.

> Additionally, the undersigned considered the opinion of the State agency psychological consultants, who opined that there was insufficient evidence to establish severe mental impairments. Accordingly, the undersigned finds the psychological consultants' opinions to be persuasive, as said opinions are consistent with and supported by the totality of the record, which fails to document severe mental impairments, recurring mental health counseling, or inpatient psychiatric hospitalizations. In fact, during the hearing [Plaintiff] testified that her mental health impairments had not prevented her from working.

(R. at 23-24 (internal citations omitted).)  Relying on the vocational expert's testimony, the ALJ found that through the DLI, Plaintiff was capable of performing past relevant work as an

Assembler and as a Cleaner, and that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (R. at 24.) Considering her age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as an Assembler, Cleaner, and Warehouse Worker. (*Id.*) He therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from February 1, 2017, the alleged onset date, through September 30, 2018, the date last insured. (R. at 26.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff puts forth one assignment of error, arguing that the ALJ's step two analysis and RFC determination are not supported by substantial evidence.  (ECF No. 11 at PAGEID ## 742-746.)  Specifically, Plaintiff takes issue with the ALJ's opinion that Plaintiff's anxiety, depressive disorder, and stomach issues were "non-severe" impairments, a statement which Plaintiff argues "erroneously minimizes the significant and well-documented impairments of stomach issues, nausea, vomiting and gastroesophageal reflux throughout the relevant time period."  (*Id.* at PAGEID # 743.)  Plaintiff argues that these impairments and symptoms "had a significant impact on her ability to do basic work activities," and she highlights her hearing testimony in which she stated that she stopped working because she "couldn't stay out of the bathroom long enough to go to work."  (*Id.* (citing R. at 38).)  Finally, Plaintiff argues that "[i]nstead of relying on the substantial evidence of the record, the ALJ simply disregarded [Plaintiff's] symptoms of nausea, vomiting, diarrhea, and fatigue, after determining that they were non-severe."  (*Id.* at PAGEID # 746.)  Plaintiff argues that additional limitations are necessary, and that "[a]t the very least, it should be clear upon reading the ALJ's decision that the ALJ considered [Plaintiff's] nausea, fatigue, diarrhea, and vomiting in determining [the] RFC."  (*Id.*)

In response, the Commissioner argues that "the ALJ properly evaluated Plaintiff's stomach issues according to the regulations and substantial evidence supports the ALJ's severe impairment determination and residual functional capacity assessment." (ECF No. 16 at PAGEID # 756.)  Specifically, the Commissioner states that "[t]he ALJ directly addressed Plaintiff's stomach symptoms (specifically nausea, vomiting, and acid reflux) at step two by stating that they received 'conservative treatment' and were otherwise 'relatively minor, resolved, nonrecurring, or controlled,'" and argues that the ALJ's assessment complies with the applicable regulations and is supported by substantial evidence in the record. (*Id.* at PAGEID # 762.)  Regardless, however, the Commissioner argues that there is no reversible error at the second step where, like here, an ALJ proceeds with the disability analysis beyond the second step. (*Id.* at PAGEID ## 762-763.)  The Commissioner notes that the ALJ considered Plaintiff's stomach impairments and symptoms in the RFC determination, a fact which the Commissioner contends "means it does not matter that they were not considered severe impairments [at step two]." (*Id.* at PAGEID # 763.)  As for the RFC, the Commissioner maintains that "the ALJ satisfied the agency's policy and considered Plaintiff's stomach symptoms when assessing her [RFC]." (*Id.* at PAGEID # 764.)  The Commissioner highlight's the ALJ's assessment of the State agency medical consultants' opinions, and notes that "the ALJ directly incorporated Plaintiff's stomach impairments into the [RFC]" as well. (*Id.* at PAGEID ## 764-765.)

Plaintiff did not file a Reply brief.  Accordingly, the matter is ripe for judicial review. Although Plaintiff presents only one assignment of error, the Court will address each part of Plaintiff's argument separately.

A.     **The ALJ Did Not Commit Reversible Error at Step Two by Failing to Recognize Plaintiff's Anxiety, Depressive Disorder, and Stomach Issues As Medically Determinable Impairments.**

Regarding the first part of Plaintiff's argument, the Court finds that Plaintiff is mistaken that the ALJ's failure to recognize Plaintiff's anxiety, depressive disorder, and stomach issues as medically determinable impairments at step two of the evaluation process constitutes reversible error.  As the Sixth Circuit and this Court have observed several times, step two of the evaluation process is merely meant to "screen out totally groundless claims," and it is well settled that where an ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two '[does] not constitute reversible error.'"  *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))); *see also Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug. 11, 2020) (*"***Even assuming that the ALJ should have discussed plaintiff's alleged [impairment] at step two, any error from this omission was harmless***. Step two is the means by which the Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.]'") (emphasis added; internal quotations and citations omitted).

Here, the ALJ found that Plaintiff had several impairments at step two of the evaluation process, and rightfully proceeded to the remaining steps of the disability determination.  (R. at 17-18.)  This ends the step two analysis which Plaintiff puts before the Court.  Even assuming, *arguendo*, that the ALJ should have discussed Plaintiff's anxiety, depressive disorder, and stomach issues at step two, as Plaintiff contends, such error was harmless because the ALJ

10

expressly considered Plaintiff's anxiety, depressive disorder, and stomach issues (at great length)

throughout steps three and four of the disability determination:

- **R. at 21:** "Further, [Plaintiff] testified that she suffered from anxiety and depression for many years, but stated that she had not had a panic attack for six years and was not anxious at work."

- **R. at 21:** "On February 9, 2017, [Plaintiff] reported concerns regarding diarrhea, nausea, and vomiting; however, she was advised to increase her water and food intake."

- **R. at 21-22:** "Further, after [Plaintiff's] DLI and during an emergency care visit, on November 7, 2018, she reported complaints of nausea, vomiting, and that she had not been able to keep any foods or fluids down. She was diagnosed with nausea/vomiting, dehydration, hypokalemia, and alcoholic liver disease. An ultrasound of her right upper quadrant noted mild gallbladder wall thickening of an uncertain etiology and probable diffuse hepatic steatosis. During a follow-up visit, on November 15, 2018, she reported complaints of nausea, vomiting, fatigue, and weight loss. Her physical examination was generally normal, except her skin was noted as pale and jaundiced, and palpation of her abdomen revealed tenderness in the right and left lower quadrants."

- **R. at 22:** "After [Plaintiff's] DLI, and during an emergency care visit that occurred in November 7, 2018, she reported complaints including nausea, vomiting, and an inability to keep foods or fluids down. After examination and treatment, she was diagnosed with nausea/vomiting, dehydration, hypokalemia, and alcoholic liver disease. On November 15, 2018, she reported symptoms including abdominal pain, vomiting, fatigue, and weight loss. Further, a December 3, 2018 CT scan of [Plaintiff's] abdomen and pelvis revealed fatty infiltration of the liver and mild extrahepatic biliary duct dilatation. Next, on December 26 2018, a MRI of [Plaintiff's] abdomen indicated mild biliary dilation."

- **R. at 22:** "In April of 2019, during an evaluation for paracentesis, her anxiety and depression were noted as stable, and she reported she had not drank alcohol since December 2018."

- **R. at 24:** "Additionally, the undersigned considered the opinion of the State agency psychological consultants, who opined that there was insufficient evidence to establish severe mental impairments."

Plaintiff is therefore incorrect to suggest that the ALJ "simply disregarded [Plaintiff's] symptoms

of nausea, vomiting, diarrhea, and fatigue, after determining that they were non-severe." (ECF

No. 11 at PAGEID # 746.)  Rather, the ALJ affirmatively acknowledged and discussed

Plaintiff's anxiety, depressive disorder, and stomach issues, and analyzed the effect those symptoms had on how he devised Plaintiff's RFC, supporting his decision with substantial evidence from the record. *Rosshirt*, 2020 WL 4592393 at *3. Accordingly, the first part of Plaintiff's objection is not well taken.

**B.      Substantial Evidence Supports the ALJ's RFC Finding.**

As to the second part of Plaintiff's argument, the determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (internal footnote omitted). The ALJ must also consider all medical opinions he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). "[T]here is no regulatory requirement that an ALJ adopt every facet of a particular medical opinion in formulating an RFC, so long as the record as a whole supports the RFC actually determined by the ALJ, and she adequately explains her analysis in a manner sufficient to allow review." *Kincaid v. Comm'r of Soc. Sec.*, No. 1:16-CV-736, 2017 WL 9515966, at *3 (S.D. Ohio June 12, 2017), *report and recommendation adopted*, No. 1:16CV736, 2017 WL 4334194 (S.D. Ohio Sept. 30, 2017).

Here, the Court finds that the ALJ's decision is supported by substantial evidence.  First, the Court rejects Plaintiff's implicit suggestion that it is not "clear upon reading the ALJ's decision that the ALJ considered [Plaintiff's] nausea, fatigue, diarrhea, and vomiting in determining his RFC."  (ECF No. 11 at PAGEID # 746.)  A plain reading of the ALJ's decision easily refutes this statement, as the ALJ clearly stated that "the updated record **documents a greater degree of limitation, due to the symptoms associated with [Plaintiff's] severe impairments, including diarrhea, nausea, vomiting, fatigue, and weight loss, and supports limiting [Plaintiff] to performing work at the light level of exertion, consistent with the limitations found within the above-stated RFC**."  (R. at 24 (emphasis added).)  Thus, it is clear that the ALJ not only considered Plaintiff's nausea, fatigue, diarrhea, and vomiting, but he also expressly incorporated those symptoms into his RFC – and he did so in a more restrictive fashion than had the State agency consultants who reviewed Plaintiff's file.  (*Id.*)  Also, as discussed, the ALJ not only cited objective and subjective record evidence in support of his RFC, but he also clearly explained (multiple times) his RFC, including as to how the RFC accounted for Plaintiff's nausea, fatigue, diarrhea, and vomiting.  Accordingly, because the ALJ appropriately acknowledged Plaintiff's symptoms and supported his decision with substantial evidence from the record, the Court must defer to the ALJ's RFC.  *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted).

While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for his RFC determination, and the ALJ's explanation enjoys substantial support in the record.  *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670,

2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-CV-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.")). Under these circumstances, the Court finds no merit to Plaintiff's statement of error.

## VII. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date:  October 21, 2021**                    */s/ Elizabeth A. Preston Deavers*
                                               **ELIZABETH A. PRESTON DEAVERS**
                                               **UNITED STATES MAGISTRATE JUDGE**